IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| KIMBERLY JEAN BROWN, *et al*,<br><br>Plaintiff,<br><br>v.<br><br>SERVICENOW, INC., *et al*,<br><br>Defendants. | No. 25-cv-05629<br><br>Judge Franklin U. Valderrama |

## ORDER

On May 20, 2025, Plaintiff Kimberly Jean Brown (Brown), proceeding *pro se*, brought a sprawling fifty-nine count, to be exact, complaint—against dozens of defendants on behalf of herself and the Brown Washington Trust (the Trust). R. 8,[1] Compl. Brown subsequently voluntarily dismissed all Defendants except for seven. R. 52, Notice of Voluntary Dismissal. Two of the remaining Defendants, Michelle Montgomery (Montgomery) and James D. Montgomery & Associates Ltd. (the Montgomery Firm) (collectively the Montgomery Defendants), move to dismiss the Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). R. 49, Mot. Dismiss. For the following reasons, the Court grants the motion to dismiss. Further, because Brown is *pro se*, this Order only pertains to the claims brought by Brown, not the Trust. *J.J. Rissell, Allentown, PA Tr. v. Marchelos*, 976 F.3d 1233, 1235 (11th Cir. 2020) ("A trust, like a corporation, 'is an artificial entity that can act only through agents, cannot appear pro se, and must be represented by counsel.'").

## Background[2]

Brown is an Illinois transactional attorney who practiced in estate planning. Compl. ¶¶ 42–44. In 2015, Brown formed the company "Legacy" to develop an estate planning software that she had designed.[3] *Id.* ¶ 36. Previously, Brown had been introduced to Dr. Charles Hamilton (Dr. Hamilton), whom she provided with estate planning services. *Id.* ¶¶ 53–57. After a long series of events, Dr. Hamilton agreed to provide capital for Brown's company, and Brown began working with Hamilton and his business manager, Lila Goldston (Goldston). *Id.* ¶¶ 58–86. After forming Legacy, Brown hired the software developer Kohmedia to build the software. *Id.* ¶¶ 87–105.

[1]Citations to the docket are indicated by "R." followed by the docket number or filing name, and where necessary, a page or paragraph citation.

[2]The Court takes the following allegations as true at this stage and makes all reasonable inferences in favor of Brown. *See McReynolds v. Merrill Lynch & Co.*, 694 F.3d 873, 879 (7th Cir. 2012).

[3]Brown also recounts a long series of unfortunate events relating to other Defendants. In this background section, the Court only focuses on the details relevant to the Montgomery Defendants.

Around this time, however, Brown began having various concerns with Goldston's influence on Dr. Hamilton. *Id.* ¶¶ 106–114. Eventually, Dr. Hamilton "agreed to allow Ms. Brown to either convert his equity into debt or find a buyer to purchase his interest," and "agreed to hire an attorney to assess Defendant Goldston's actions, review his estate plan and handle the equity-to-debt conversion." *Id.* ¶ 115.

In September 2015, Dr. Hamilton hired Michelle Montgomery, a partner at James D. Montgomery & Associates, Ltd. *Id.* ¶ 116. Brown alleges that Montgomery was "antagonistic and accusatory towards Ms. Brown," and said that her job was "to clean up Ms. Brown's mess." *Id.* ¶ 118. Brown eventually provided a first draft of the proposed equity-to-debt conversion documents to Montgomery in October 2015, and Brown agreed to be a guarantor on the proposed note. *Id.* ¶ 119. Brown alleges that "Montgomery insisted that Ms. Brown agree to onerous terms in the conversion documents." *Id.* ¶ 121. Further, "eager to complete the equity-to-debt conversion as soon as possible, Ms. Brown mailed signed originals of the proposed equity-to-debt conversion documents to" Montgomery. *Id.* ¶ 121. Montgomery rejected the documents on December 9, 2015. *Id.* ¶ 122. Brown asked Montgomery to specify her objections to the documents the next day. *Id.* ¶ 123.

At that time, however, Kohmedia also defaulted on its contract with Legacy. *Id.* ¶ 124. Brown informed Montgomery of the default "and asked Defendant Montgomery to suggest modifications to the equity-to-debt conversion documents as soon as possible to conclude the conversion." *Id.* ¶ 126. Montgomery did not respond until March 4, 2016. *Id.* ¶ 126. Brown does not allege what this response entailed. Brown alleges that "[a]lthough Ms. Brown sent signed equity-to-loan conversion documents to Defendant Montgomery for Dr. Hamilton's signature on more than one occasion, the equity-to-debt conversion was never completed." *Id.* ¶ 127. Consequently, Brown alleges, Montgomery's actions prevented Legacy from raising capital and contributed to Legacy's eventual failure. *Id.* ¶ 127.

Next begins what Brown alleges is a widespread disinformation and intimidation campaign against her. *Id.* ¶¶ 250–278. In one of these incidents, Brown was at the "Daley Center," outside a courtroom, when she alleges that four men in suits and two policemen "congregated near" her and very loudly discussed that "someone would be arrested in the courtroom for taking advantage of an elderly person." *Id.* ¶ 255. She alleges this incident may have been filmed. *Id.* Later, as part of the disinformation campaign, Brown alleges that information began circulating online that Brown would be losing her law license. *Id.* ¶ 271. "In an attempt to clear her name," Brown filed a request for an investigation with the Illinois Attorney Registration and Disciplinary Comission (ARDC) in 2020 requesting that the ARDC assess Montgomery's actions "in relation to Legacy and Dr. Hamilton." *Id.* ¶ 272. Brown alleges that Montgomery is also a hearing officer for the ARDC. *Id.* ¶ 272, n.88. Brown alleges that Montgomery gave the ARDC false statements in response which "were substantially similar to the false statements the four men and police officers were discussing during the Daley Center incident in 2018," and that "she admitted to conducting an unsanctioned investigation." *Id.* ¶ 273. She then realized that the incident at the Daley Center "may have been intended to intimidate" her. *Id.* ¶ 255. Brown later sued Montgomery for defamation. *Id.* ¶ 274. The trial court granted the defendants' motion to dismiss the complaint, with leave to amend. *Id.* ¶ 275.

Based on these facts, Brown, individually and purportedly also on behalf of the Trust brings forty-four claims against the Mongomery Defendants: five counts of violations of the Illinois Deceptive Trade Practices Act (815 ILCS 510/1-7) "and/or" the Illinois Consumer Fraud Act (815 ILCS 505/1-12) (Counts Two, Ten, Nineteen, Twenty Six, and Thirty Three); four counts of tortious interference with contracts (Counts Three, Nine, Sixteen, and Twenty Five); three violations of the Defend Trade Secrets Act (18 U.S.C. §1836) and the Illinois Trade Secrets Act (765 ILCS 1065/1 *et seq*) (Counts Four, Eighteen, and Forty One); six counts of conspiracy to commit mail fraud (18 U.S.C. §1341) (Counts Five, Eleven, Twenty, Twenty Eight, Forty Seven, and Fifty Five); nine counts of conspiracy to commit wire fraud (18 U.S.C. §1343) (Counts Six, Twelve, Twenty One, Twenty Nine, Thirty Four, Forty Two, Forty Eight, Fifty, and Fifty Six); breach of fiduciary duty (Count Seven); four counts of fraudulent concealment (Counts Eight, Fifteen, Twenty Seven, and Forty); invasion of privacy (Count Thirty two); theft in violation of 18 U.S.C. § 2314 (Count Thirty Five); receiving stolen property in violation of 18 U.S.C. § 2315 (Count Thirty Six); money laundering (Count Thirty Seven); two counts of tortious interference with business expectancy (Counts Thirty Eight and Forty Nine); violation of the Computer Fraud and Abuse Act (Count Thirty Nine); traveling in aid of a racketeering enterprise (Count Forty Three); witness tampering (Count Forty Four); "trespass, false imprisonment, intentional infliction of emotional distress, invasion of privacy, theft and/or fraudulent concealment" (Count Forty Five); interference with commerce by threats or violence in violation of 18 U.S.C. § 1951 (Count Forty Six); violations of Racketeer Influenced and Corrupt Organizations Act (RICO) (18 U.S.C. §1964) (Count Fifty Seven).

The Montgomery Defendants move to dismiss the claims against them pursuant to Federal Rule of Civil Procedure 12(b)(6) asserting that Brown's claims are barred by *res judicata* and alternatively, she fails to state a claim. *See generally* Mot. Dismiss. Before the Court is the fully briefed motion. R. 64, Resp.; R. 65, Reply.

**Legal Standard**

A motion to dismiss under FED. R. CIV. PRO. 12(b)(6) challenges the sufficiency of the complaint. *Hallinan v. Fraternal Ord. of Police of Chicago Lodge No. 7*, 570 F.3d 811, 820 (7th Cir. 2009). Under Rule 8(a)(2), a complaint must include only "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). To survive a motion to dismiss, a complaint need only contain factual allegations, accepted as true, sufficient to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* The allegations "must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. The allegations that are entitled to the assumption of truth are those that are factual, rather than mere legal conclusions. *Iqbal*, 556 U.S. at 678–79.

**Analysis**

The Montgomery Defendants move to dismiss Brown's claims based on (1) *res judicata*, and (2) failure to plausibly state a claim. The Court addresses each in turn below.

"Under res judicata, a final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action." *Barr v. Bd. of Trs. of W. Illinois Univ.*, 796 F.3d 837, 839 (7th Cir. 2015). "Res judicata promotes predictability in the judicial process, preserves the limited resources of the judiciary, and protects litigants from the expense and disruption of being haled into court repeatedly." *Id.* at 840. *Res judicata* is an "affirmative defense[] that generally must be asserted by defendants in their answer to the plaintiff's complaint and then raised in either a motion for judgment on the pleadings, *see* FED. R. CIV. P. 12(c), or summary judgement, *see* FED. R. CIV. P 56(a)." *Sapp v. Foxx,* 106 F. 4th 660, 664 (7th Cir. 2024). That said, "when an affirmative defense is disclosed in the complaint, it provides a proper basis for a Rule 12(b)(6) motion." *Muhammad v. Oliver*, 547 F.3d 874, 878 (7th Cir. 2008).

As an initial matter, the Montgomery Defendants urge the Court to apply Illinois's "more liberal transactional test" to decide whether *res judicata* bars these claims. Mot. Dismiss at 2. But here, the earlier final judgment was rendered in federal court, and thus, "federal res judicata principles apply to this question." *Palka v. City of Chicago*, 662 F.3d 428, 437 (7th Cir. 2011). "In federal court res judicata has three elements: (1) an identity of parties; (2) a final judgment on the merits; and (3) an identity of the cause of action (as determined by comparing the suits' operative facts)." *Id.* On the third element, the Seventh Circuit has held that "two claims are one for purposes of res judicata if they are based on the same, or nearly the same, factual allegations." *Barr*, 796 F.3d at 840. "Where it applies, res judicata prevents the relitigation of claims already litigated as well as those that could have been litigated but were not." *Palka*, 662 F.3d at 437. In other words, res judicata prevents "claim splitting in duplicative lawsuits." *Id.*

The Montgomery Defendants argue that Brown's current case is barred by *res judicata* because the case that Brown previously brought against them, *Brown v. Montgomery, et al.*, No. 20-cv-4893 (the 2020 Case), involved the same parties; is based on the same facts, and judgment was entered in favor of the Montgomery Defendants in that case. Mot. Dismiss at 2. In the prior case, as in this case, Brown brought claims based on Montgomery's actions related to the proposed debt-to-equity conversion with Hamilton and the statements Montgomery made to the ARDC. *Id.* at 3. Brown counters that the claims in this case involve "newly discovered material" and arise from "distinct transactions." Resp. at 4. Specifically, she argues that the 2020 Case focused on defamation, false light, and common law conspiracies, where this complaint focuses on trade secrets and RICO claims that could only be brought when she "uncovered" the evidence in 2023. Resp. at 2. Montgomery Defendants reply that the conclusory allegations that they conspired with a myriad of other Defendants to commit a host of other wrongdoings, without any facts to support that allegation, are still barred, and regardless, they do not state a claim. *See generally* Reply. For the reasons stated below, the Court agrees with the Montgomery Defendants.

All the elements of *res judicata* are met here. First, identity of the parties is satisfied because Brown sued the same defendants, the Montgomery Defendants, in both the 2020 Case and this case. That the 2020 Case or the instant case may have involved additional parties "is irrelevant." *Palka*, 662 F.3d at 437. Second, a final judgment on the merits was issued in the 2020 Case. In the 2020 Case, the court granted Defendants' motion to dismiss the first amended complaint with leave to file an amended complaint. R. 72. Brown then filed a second amended

complaint (SAC), and the court granted the Defendants' motion to dismiss that complaint as well. R. 106. Eventually, the case was remanded for discovery into subject matter jurisdiction, but the district court ended up dismissing the case with prejudice as a sanction for Brown's failure to comply with court orders. R. 167. That judgment was affirmed. R. 183. It is undisputed that dismissal for a failure to prosecute operates as a judgment on the merits. *Barr v. Bd. of Trs. of W. Illinois Univ.*, 796 F.3d 837, 840 (7th Cir. 2015) (citing FED. R. CIV. P. 41(b) (involuntary dismissal for failure to prosecute "operates as an adjudication on the merits")).

Last, both lawsuits assert claims based on the Montgomery Defendants': (1) representation of Dr. Hamilton in the proposed equity-to-debt conversation, and (2) allegedly false representations that Montgomery made to the ARDC. *See generally* R. 76, SAC. Both complaints tell the same story. In fact, many of the allegations in the instant case appear to be virtually identical to those in the 2020 Case. *Compare* SAC ¶ 39 ("From the outset, Ms. Montgomery was antagonistic and accusatory toward Ms. Brown. Shortly after being hired, Ms. Montgomery said that her job was, according to Ms. Goldston, to "clean up" Ms. Brown's mess."), *with* Compl. ¶ 118 (stating the same). Accordingly, the Court agrees that any claims arising from these events are barred by *res judicata* because they are "based on the same, or nearly the same, factual allegations." *Barr*, 796 F.3d at 840 (affirming holding that res judicata barred claims although suits were "a little different" and presented different theories of retaliation, where "both suits ar[o]se out of the same main event").

While the Court could end its analysis at this juncture, for the sake of completeness, the Court addresses the Montgomery Defendants alternative argument that Brown fails to plead any cognizable facts relating to anything they are alleged to have done. The Court agrees. To the extent that Brown is bringing claims based on events separate from those already adjudicated in the 2020 Case, Brown has failed to state a claim.

In her complaint Brown alleges that the Montgomery Defendants "conspired" with the dozens of other defendants in this case to commit all of the alleged wrongdoings described in the complaint. Beyond the allegations described in the background section, Brown includes no other facts to support these claims. While the Court will not rehash the voluminous allegations in the complaint, it is fair to say that Brown simply repeats that the Montgomery Defendants "conspired" to work with the other Defendants to commit all these other acts, without any specifics. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements," will not do. *Iqbal*, 556 U.S. at 663. Accordingly, the Court finds that to the extent Brown's claims are not barred by *res judicata*, they are due to be dismissed for failure to state a claim.

## Conclusion

For the foregoing reasons, the Court grants the Montgomery Defendants' motion to dismiss. Brown's claims are dismissed with prejudice to the extent they are based on the same events in the 2020 Case. To the extent Brown brings claims arising from separate, later events, the Court dismisses those claims without prejudice for failure to state a claim. *Runnion v. Girl Scouts of Greater Chicago & Nw. Ind.*, 786 F.3d 510, 518 (7th Cir. 2015) (there is a "presumption in favor of giving plaintiffs at least one opportunity to amend"). Brown may file an amended

complaint on or before October 2, 2026. The Court also takes judicial notice of the fact that Brown not only filed the 2020 Case based on these facts, but she also filed a case in 2024 based on these same facts. *Brown Washington Trust et al v. Gartner et al*, 1:24-cv-13132. That case was also dismissed with prejudice. Now, the Court is again dismissing her complaint. The Court advises Brown that any amendments must be in accordance with her Rule 11 obligations and must not be based on claims already adjudicated by this Court or others.

Dated: September 18, 2026

United States District Judge
Franklin U. Valderrama