**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

KIMBERLY JEAN BROWN, *et al*,

Plaintiff,

v.

SERVICENOW, INC., *et al*,

Defendants.

No. 25-cv-05629

Judge Franklin U. Valderrama

# ORDER

On May 20, 2025, Plaintiff Kimberly Jean Brown (Brown), proceeding *pro se*, brought a sprawling fifty-nine count, to be exact, complaint—against dozens of defendants on behalf of herself and the Brown Washington Trust (the Trust). R. 8,[1] Compl. Since then, she has voluntarily dismissed all Defendants except for seven. R. 52, Notice of Voluntary Dismissal. One of the remaining Defendants, Omega Psi Phi Fraternity, Inc. (Omega), moves to dismiss the Complaint pursuant to Federal Rules of Civil Procedure 12(b)(2) and 12(b)(6). R. 49, Mot. Dismiss. For the following reasons, the Court grants the motion to dismiss. Further, because Brown is *pro se*, this Order only pertains to the claims brought by Brown, not the Brown-Washington Trust. *J.J. Rissell, Allentown, PA Tr. v. Marchelos*, 976 F.3d 1233, 1235 (11th Cir. 2020) ("A trust, like a corporation, 'is an artificial entity that can act only through agents, cannot appear pro se, and must be represented by counsel.'").

## Background[2]

Brown is an Illinois transactional attorney who practiced in estate planning. Compl. ¶¶ 42–44. In 2015, Brown formed the company "Legacy" to develop an estate planning software that she had designed.[3] *Id.* ¶ 36. At some point, Brown connected with Omega Psi Phi Fraternity (Omega). Omega is incorporated in the District of Columbia and has its principal place of business in Decatur, GA. *Id.* ¶ 32. It maintains chapters of its fraternity in Illinois. *Id.* From 2010 to 2016, Brown had "presented several complimentary living trust presentations" for Defendant Omega Psi Phi Fraternity, Inc. (Omega) at their district and national conventions. *Id.* ¶ 194. In 2013, one of these presentations was conducted at Omega's convention in Illinois and arranged by Andrew

[1]Citations to the docket are indicated by "R." followed by the docket number or filing name, and where necessary, a page or paragraph citation.

[2]The Court takes the following allegations as true at this stage and makes all reasonable inferences in favor of Brown. *See McReynolds v. Merrill Lynch & Co.*, 694 F.3d 873, 879 (7th Cir. 2012).

[3]Brown also recounts a long series of unfortunate events relating to other Defendants. In this background section, the Court only focuses on the details relevant to Omega.

Garner (Garner). *Id.* ¶ 195. Garner then introduced Brown to Shannon, the "Grand Keeper of Finance" for Omega. *Id.* Brown shared with Shannon that she was developing an estate planning software and asked to discuss group sales of the software. *Id.* ¶ 196. Shannon told Brown that he was the right person to speak to for software sales. *Id.*

Shannon and Brown continued to discuss sales. *Id.* ¶ 197. In 2015, Brown presented Shannon with a proposed group sales agreement. *Id.* ¶ 198. Brown alleges that Shannon then "offered to represent Legacy's Software as an independent contractor for business development for all national Greek fraternities and sororities." *Id.* ¶ 199. Brown said yes, and Shannon signed an independent contractor and confidentiality agreement with Legacy. *Id.*

From 2015 to 2016, Brown traveled at Shannon's request to various events to demonstrate Legacy's software. *Id.* ¶ 200. At one point during this time, Shannon requested that Brown travel to Atlanta to finalize the group sales agreement between Legacy and Omega. *Id.* ¶ 201. He arranged for Brown to stay at Omega's "Corporate House." *Id.* ¶ 201. While Brown was in transit to Atlanta, Shannon told her that Omega's executive director signed off on the group sales agreement and there was no need for a meeting. *Id.* ¶ 202. Once Brown got to Atlanta, she worked with Shannon at the Omega Corporate House to conduct user testing of the Legacy software. *Id.* ¶ 203. While at the Corporate House, however, Brown's "laptop and phone crashed repeatedly" while connected to "the network in the Omega Corporate House." *Id.* ¶ 204. Shannon's devices did not crash. *Id.* ¶ 204. In June 2016, Shannon asked Brown to present at Omega's national convention in Las Vegas. *Id.* ¶ 206. Shannon provided Brown with "presenter Wi-Fi" at the convention, but "Brown's devices crashed more than once" while connected to the Wi-Fi. *Id.* ¶ 207.

Meanwhile, for a multitude of reasons, Brown was experiencing difficulties launching the Legacy software, and she informed Shannon that the software would not be launching. *Id.* ¶¶ 208–209. Nevertheless, Shannon contacted Ms. Brown "more than once in 2017" to request that Brown create "California document templates for Legacy's Software." *Id.* ¶ 210. Brown again informed him that the software would not be launching. *Id.* ¶ 211. Brown alleges that she "thought little of Defendant Shannon's unusual, untimely and persistent requests for California templates until Ms. Brown became aware in 2023 that Legacy's Software is being operated as TrustandWill.com and it is headquartered in California." *Id.* ¶ 213. For context, Brown also alleges in her complaint that other Defendants in this case (which otherwise appear to be unrelated to Shannon or Omega) wrongfully founded a competing software company using her Legacy Software. *Id.* ¶¶ 219–244. Brown alleges that the founders of TrustandWill.com and a host of other defendants conspired to hack Omega's Wi-Fi networks to steal her information when she worked at the Omega Corporate House and presented at the Omega convention. *See e.g.*, *id.* ¶¶ 467–481. She provides no details about how these various Defendants conspired with each other, or how this theft actually occurred. She alleges, among other things, that Omega was negligent in maintaining its Wi-Fi networks, ultimately causing the failure of her business. *Id.*

Based on these allegations, Brown brings claims against Omega for negligence (Counts Thirty One and Forty); invasion of privacy (Count Thirty Two); violations of the Illinois Deceptive Trade Practices Act (IDTPA) (815 ILCS 510/1-7) "and/or" the Illinois Consumer Fraud Act (ICFA) (815 ILCS 505/1-12) (Count Thirty Three); wire fraud in violation of 18 U.S.C. §1343 (Count Thirty Four); violations of the Computer Fraud and Abuse Act (CFAA) (18 U.S.C. §1030)

(Count Thirty Nine); misappropriating trade secrets under the Defend Trade Secrets Act (DTSA) (18 U.S.C. §1836) and the Illinois Trade Secrets Act (765 ILCS §1065/1 *et seq*) (Count Forty One); violations of the Racketeer Influenced and Corrupt Organizations Act 18 U.S.C. §1964 (Count Fifty Seven); intentional infliction of emotional distress (IIED) (Count Fifty Eight); and vicarious liability (Count Fifty Nine).

Omega now moves to dismiss the claims against them for lack of personal jurisdiction and failure to state a claim. *See generally* Mot. Dismiss. The motion is now fully briefed. R. 64, Resp.; R. 65, Reply.

## Legal Standard

A motion to dismiss under FED. R. CIV. PRO. 12(b)(6) challenges the sufficiency of the complaint. *Hallinan v. Fraternal Ord. of Police of Chicago Lodge No. 7*, 570 F.3d 811, 820 (7th Cir. 2009). Under Rule 8(a)(2), a complaint must include only "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). To survive a motion to dismiss, a complaint need only contain factual allegations, accepted as true, sufficient to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* The allegations "must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. The allegations that are entitled to the assumption of truth are those that are factual, rather than mere legal conclusions. *Iqbal*, 556 U.S. at 678–79.

A 12(b)(2) motion challenges the Court's jurisdiction over a party. FED. R. CIV. P. 12(b)(2). "When a defendant moves to dismiss a complaint for lack of personal jurisdiction under Rule 12(b)(2), the plaintiff bears the burden of making a prima facie case that jurisdiction exists." *B.D. by & through Myer v. Samsung SDI Co.*, 91 F.4th 856, 860 (7th Cir. 2024). "[W]e take as true all well-pleaded facts alleged in the complaint and resolve any factual disputes in [any] affidavits in favor of the plaintiff[s]." *Matlin v. Spin Master Corp.*, 921 F.3d 701, 705 (7th Cir. 2019). When a court relies only on the pleadings to decide personal jurisdiction, and doesn't hold an evidentiary hearing, the plaintiff need only make out a prima facie case for personal jurisdiction. *CDW Corp. v. Mainline Info. Sys., Inc*. 2025 WL 3505507, at *2 (N.D. Ill. Sept. 19, 2025) (cleaned up).

## Analysis

Omega argues that Brown's claims against should be dismissed because (1) there is no personal jurisdiction over it, and (2) Brown has not stated a claim against it. Memo. Mot. Dismiss. For the reasons stated below, the Court agrees that the Court lacks personal jurisdiction over Omega.

Omega first argues that the Court lacks personal jurisdiction over it for these claims. Memo. Dismiss at 2. There are no affidavits or other evidence submitted by the parties, so the Court reviews and takes as true the allegations in the complaint, and resolves all disputes in favor of Brown. *See Matlin*, 921 F.3d at 705.

"In a case involving federal question jurisdiction, 'a federal court has personal jurisdiction over the defendant if either federal law or the law of the state in which the court sits authorizes service of process to that defendant.'" *Curry v. Revolution Lab'ys, LLC*, 949 F.3d 385, 393 (7th Cir. 2020). "The governing statute in Illinois permits its courts to exercise personal jurisdiction up to the limits of the Due Process Clause of the Fourteenth Amendment." *Kipp v. Ski Enter. Corp. of Wisconsin*, 783 F.3d 695, 697 (7th Cir. 2015). "Thus, the question we must answer is whether the exercise of personal jurisdiction over the defendants 'comports with the limits imposed by federal due process.'" *Curry*, 949 F.3d at 393. The Court notes that "normally there is 'no operative difference' between Illinois constitutional and federal constitutional limits on personal jurisdiction," and the parties have not otherwise argued that there is, so the Court looks to cases analyzing both for guidance. *Philos Techs., Inc. v. Philos & D, Inc.*, 802 F.3d 905, 912 (7th Cir. 2015).

"Under the Supreme Court's well-established interpretation of the Fourteenth Amendment's due process clause, a defendant is subject to personal jurisdiction in a particular state only if the defendant had 'certain minimum contacts with it such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Mobile Anesthesiologists Chicago, LLC v. Anesthesia Assocs. of Houston Metroplex, P.A.*, 623 F.3d 440, 443 (7th Cir. 2010) (citation omitted). "While there are two branches of personal jurisdiction theory—general and specific—only the latter is relevant here," as Brown concedes that the Court does not have general jurisdiction over Omega. *Philos Techs., Inc. v. Philos & D, Inc.*, 802 F.3d 905, 913 (7th Cir. 2015); *see* Resp. at 2 ("general jurisdiction ordinarily lies where a corporation is 'at home.' Plaintiffs therefore principally rely on specific jurisdiction . . . ."). "For specific personal jurisdiction, there must be: (1) purposeful availment—the defendant must have purposefully directed his activities at the forum state or purposefully availed himself of the privilege of conducting business in the forum; (2) relatedness—the alleged injury must arise out of or relate to the defendant's forum-related activities; and (3) fairness—the exercise of personal jurisdiction must comport with traditional notions of fair play and substantial justice." *B.D. by & through Myer v. Samsung SDI Co.*, 91 F.4th 856, 861 (7th Cir. 2024). Because the Court ultimately finds that any contacts Omega has with the state of Illinois are not related to the claims here, it analyzes the relatedness prong only, as that is dispositive. *See Felland v. Clifton*, 682 F.3d 665, 676 (7th Cir. 2012) ("Even where a defendant's conduct is purposefully directed at the forum state, the plaintiff must also show that his injury 'arises out of' or 'relates to' the conduct that comprises the defendant's contacts.").

Omega argues that any contacts it has with Illinois are not related to the claims Brown brings against it, and thus, Brown has not established a *prima facie* case of personal jurisdiction. Memo. Dismiss at 4. Brown responds that Shannon is a citizen of Illinois, Omega maintains chapters in Illinois, and there were foreseeable effects of Omega's actions in Illinois. Brown's primary[4] claims against Omega, however, arise from the alleged Wi-Fi crashes she experienced at the Omega Corporate House in Atlanta and the convention in Las Vegas. Accordingly, as Omega points out in its response, Omega's chapters in Illinois are unrelated to those events, so they cannot

[4]Brown indeed brings a laundry list of claims against Omega. But the only factual allegations against Omega that come close to stating a claim involve the two times that Brown was kicked off the Omega Wi-Fi. Thus, the Court focuses on these facts for purposes of assessing personal jurisdiction.

serve as the basis of personal jurisdiction. Resp. at 4.

The Court also agrees with Omega that Shannon having a residence in Illinois does not create specific jurisdiction. Shannon was previously dismissed as a Defendant in this lawsuit, so any claims against him alone are irrelevant for purposes of personal jurisdiction over Omega. *Kipp v. Ski Enter. Corp. of Wisconsin*, 783 F.3d 695, 698 (7th Cir. 2015) ("Specific jurisdiction is case-specific; the claim must be linked to the activities or contacts with the forum."). Brown argues that Omega "established and maintained an Illinois-based-business relationship with Brown following her presentation at an Omega event in Illinois; arranged Brown's travel and appearances for Omega business dealings; and provided Wi-Fi credentials to Omega's networks in connection with those dealings." Resp. at 3. But again, the claims against Omega here are based on its maintenance of its Wi-Fi network in Atlanta and Las Vegas, Brown's travel to Atlanta and Las Vegas, and presentations in Atlanta and Las Vegas. Further, the only event alleged to have actually occurred in Illinois related to Omega was Shannon's introduction to Brown and Brown's presentation at an Illinois convention. But neither of these events gave rise to the claims against Omega, which revolve around the two times Brown's Wi-Fi crashed and the broader "conspiracy" and "negligence" surrounding these incidents. And, to be sure, there are no allegations about where or how this conspiracy played out, where the decisions about Wi-Fi maintenance were made, or any other details about the wrongful conduct, much less allegations about this having occurred in Illinois. The convention in Illinois certainly provided context for how Brown was introduced to Shannon, but they did not give rise to the claims against Omega. Neither does any of Shannon's conduct (or residence) in Illinois.

To the extent Brown argues that her own residence in Illinois is enough, the Court finds this unavailing. "The 'mere fact that [defendant's] conduct affected plaintiffs with connections to the forum State does not suffice to authorize jurisdiction.'" *Advanced Tactical Ordnance Sys., LLC v. Real Action Paintball, Inc.*, 751 F.3d 796, 802 (7th Cir. 2014), *as corrected* (May 12, 2014). And as Omega points out, "the mere geography of Plaintiff's injury and Plaintiff's location, without more, can no longer serve as the relevant contacts supporting personal jurisdiction." *United Airlines, Inc. v. Zaman*, 152 F. Supp. 3d 1041, 1050 (N.D. Ill. 2015). Omega also cites to *PCM Sales, Inc. v. Reed*, 2016 WL 11940560 (N.D. Ill. Oct. 24, 2016), which supports its position. *Reed* noted that under Supreme Court precedent, "the situs of the injury is a relevant consideration, but not sufficient on its own, for establishing minimum contacts." *Id.* at *5. Importantly, "the relation between the foreign defendant and the forum state 'must arise out of contacts that the "defendant himself" creates with the forum State,'" and the analysis "looks to the defendant's contacts with the forum State itself, not the defendant's contacts with persons who reside there." *Id.* (citing *Walden v. Fiore*, 571 U.S. 277, 284–85 (2014)). There is nothing that indicates that Omega "expressly aimed its alleged conduct at Illinois with knowledge that [Brown] would be injured in Illinois." *Id.* at *6. There are no allegations supporting the idea that Omega would know that the brunt of the harm would be suffered in Illinois.

Brown cites, without explanation or even pin cite, to *Burger King Corp. v. Rudzewicz*, 471 U.S. 462 (1985), *Russell v. SNFA*, 987 N.E.2d 778 (Ill. 2013), and *uBID, Inc. v. GoDaddy Group, Inc.*, 623 F.3d 421 (7th Cir. 2010). But none of those cases are comparable to the case here, as they involved extensive sales and advertising to residents of the forum states, where the claims arose from those sales and advertising, and the Court finds them distinguishable.

It is Brown's burden to establish a *prima facie* case of personal jurisdiction, and she has not done so. Brown requests jurisdictional discovery in the event the Court finds she has not established personal jurisdiction over Omega. Resp. at 4. Discovery into personal jurisdiction "is proper if a plaintiff establishes a colorable or prima facie showing of personal jurisdiction." *B.D. by & through Myer v. Samsung SDI Co.*, 91 F.4th 856, 864 (7th Cir. 2024). The Court finds that she has not established a colorable showing of personal jurisdiction and denies the request for discovery.

**Conclusion**

For the foregoing reasons, the Court grants Omega's motion to dismiss. Brown's claims are dismissed without prejudice. Brown may refile these claims in the proper jurisdiction.

Dated: September 18, 2026

United States District Judge
Franklin U. Valderrama